**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

**CIVIL ACTION NO. 08-8-C**

**MAURIECE HAMILTON,**                                                    **PLAINTIFF,**

**V.**             **MEMORANDUM OPINION AND ORDER**

**GENERAL ELECTRIC COMPANY,**                         **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on defendant General Electric Company's motion for summary judgment (R. 64). The court will deny the motion because genuine issues of material fact exist.

**I. BACKGROUND**

The plaintiff, Mauriece Hamilton, worked at G.E.'s Appliance Park in Louisville as an evaluation technician and scheduler for about fourteen years. In 2006, G.E. investigated how Hamilton was using his company e-mail account, computer, and telephone. G.E. learned that Hamilton was booking gigs for two bands in which he played, managing rental properties, and corresponding about a chicken wings restaurant that he owned with others. G.E.'s policies prohibit employees from using company assets and time to conduct business for personal gain. G.E. terminated Hamilton for violating the policies. Hamilton does not dispute that he violated the policies.

Hamilton, however, claims that additional circumstances surrounded G.E.'s

investigation and decision to terminate him.  Hamilton alleges, for example, that a G.E. manager exclaimed, "God, I hate that fucking nigger," when referring to him. Hamilton also alleges that several of his Caucasian colleagues conducted personal business on their company computers but were never disciplined.  Hamilton also claims that G.E. conducted its investigation while he was on leave under the Family and Medical Leave Act to treat a heart condition and that G.E. fired him soon after he returned.

Hamilton asserts claims for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; for disability discrimination under the Kentucky Civil Rights Act, K.R.S. § 344.010 et seq.; and for FMLA retaliation under 29 U.S.C. §§ 2611 et seq.  G.E. moves for summary judgment on all of Hamilton's claims.

## II. DISCUSSION

### A. Race discrimination

To prove that G.E. discriminated against him because of his race, Hamilton must satisfy either the single-motive framework set forth in 42 U.S.C. § 2000e-2(a) or the mixed-motive framework set forth in 42 U.S.C. §§ 2000e-2(m). Genuine issues of material fact exist under the mixed-motive framework, which is sufficient to preclude summary judgment.

To prove mixed-motive discrimination, Hamilton must demonstrate that race was a motivating factor when G.E. terminated him even though other factors also

2

motivated the termination. 42 U.S.C. §§ 2000e-2(m). Hamilton need not rebut all possible legitimate motivations for his termination to survive summary judgment; he need only produce evidence sufficient to convince a jury that G.E. took an adverse employment action against him and that race was a motivating factor for the action. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008).

Hamilton presents sufficient evidence. Sharon Miles, a former G.E. contract employee, alleges facts from which a jury could rationally infer that race was a motivating factor for Hamilton's termination. Miles, for example, claims that Rob Bollman, a G.E. manager, instructed her to watch what Hamilton was doing. When Miles reported to Bollman that Hamilton was running a test – one of Hamilton's job duties – Bollman allegedly exclaimed, "God, I hate that fucking nigger." R. 69, Miles Aff. ¶ 9. Miles also claims that she heard Bollman laugh and remark that Cecil Davis, another African-American employee, was "next on his list." *Id.* ¶ 11. Miles also recalls an incident when she was eating lunch with two African-American employees. When she saw Rob Byron – a G.E. manager and Hamilton's supervisor at the time – she asked him why G.E. had not offered her a permanent position. *Id.* ¶ 8. Byron allegedly told her that she needed to change the people that she was hanging around with. *Id.* A jury hearing Miles's testimony could rationally conclude that certain G.E. managers were prejudiced against African-Americans and that their prejudice was a motivating factor in Hamilton's termination.

3

Miles also provides testimony from which a jury could rationally reject G.E.'s claim that it fired Hamilton for abusing company assets and time. Miles alleges, for example, that one Caucasian employee, Tim Paxton, made and sold computer chips in a G.E. lab. *Id.* ¶ 18. She alleges that another employee, Bill Norton, bought G.E. appliances at employee discount prices and sold them as new using G.E.'s computers while he was at work. *Id.* ¶ 19. Miles claims that the Caucasian employees engaged in these activities with impunity, except when Norton was told to stop buying and selling appliances. *Id.* ¶ 19.

G.E. claims that the company knew of only one other employee who engaged in conduct like Hamilton's and that it promptly fired that employee. Hamilton's best view of the evidence, however, suggests that the activity was more prevalent and that G.E. held Caucasian employees to a different standard.

G.E. claims that Miles's allegations about Byron and Bollman's conduct cannot support Hamilton's claim because the allegations are merely "opinions about the conduct of others." R. 71 at 2. The affidavit that Miles provides does contain opinions, but it also contains factual allegations, including those discussed above. Miles's factual allegations are competent evidence.

G.E. also maintains that Byron and Bollman's statements recited in Miles's affidavit are inadmissible because they are hearsay. The statements are not hearsay because they are statements of a party-opponent. The party-opponent exclusion to the hearsay rule applies when a statement is made by a party's agent

4

or servant concerning a matter within the scope of agency or employment and is made during the existence of the relationship. Fed. R. Evid. 801(d)(2)(D). Byron and Bollman qualify as agents or servants of G.E. because they are G.E. employees. They made the alleged comments during the existence of their employment relationship because they were employees of G.E. at the time they allegedly made the statements. Both men made the alleged statements within the scope of their employment. Byron made his alleged statements in response to Miles's question about securing full-time employment. Bollman made his alleged statements in the course of investigating G.E. employees.

G.E. claims that Bollman could not have made his statements within the scope of his employment because he was not Hamilton's supervisor at the time he made the comments and had no role in Hamilton's termination. R. 71 at 7. Even if Bollman had no official role in Hamilton's termination, his statements fall within the scope of his employment if he had the ability to influence Hamilton's termination. *Carter v. Univ. of Toledo*, 349 F.3d 269, 275 (6th Cir. 2003) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999)). Viewed in the light most favorable to Hamilton, the fact that Bollman was conducting an investigation of Hamilton suggests that Bollman had the ability to influence Hamilton's termination.

G.E. contests a number of other aspects of Miles's affidavit. The court need not resolve G.E.'s remaining challenges at this stage because the affidavit contains

5

sufficient admissible allegations to preclude summary judgment.

G.E. also argues that Hamilton cannot survive summary judgment if he prosecutes a single-motive claim. The court need not address the single-motive claim at this stage, either, because Hamilton's mixed-motive claim is sufficient to send the case to a jury.

B. Disability discrimination

Hamilton does not claim that he actually suffered from a disability, but that G.E. mistakenly regarded him as having one because of his heart condition. To prove a so-called "regarded-as" disability claim, Hamilton must prove (1) that G.E. mistakenly believed that he had a physical impairment that substantially limited one or more major life activities; or (2) that G.E. mistakenly believed that Hamilton's actual, non-limiting impairment substantially limited one or more major life activities. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 594 (Ky. 2003) (citing *Sutton v. United Airlines*, 527 U.S. 471, 489 (1999)). In either case, Hamilton must prove that G.E. entertained a misperception about him: that he had a substantially limiting impairment that he did not have, or that he had a substantially limiting impairment when, in fact, the impairment was not so limiting. *Id.*

The record contains sufficient evidence to support a jury's finding that G.E. believed that Hamilton had a physical impairment. Hamilton's leave began when Hamilton experienced chest pain at work. Hamilton sent Byron an e-mail message in which he stated that he was experiencing chest pain and that he was going to

6

the emergency room. R. 69 Ex. 4. Hamilton did not return to work until several weeks after that incident. R. 69 at 11, Ex. 5.

Hamilton, however, also must prove that G.E. believed that Hamilton's heart condition substantially limited a major life activity: working. Hamilton must prove that G.E. believed that he lacked the ability to perform not only his specific job, but a class of jobs or a broad range of jobs in various classes. *Hallahan v. Courier-Journal*, 138 S.W.3d at 699, 709 (Ky. Ct. App. 2004). Hamilton must introduce additional proof on that issue, such as the number and types of jobs utilizing similar training, knowledge, skills, and ability required to perform Hamilton's work; the geographical area available to him; and common groupings within his industry. *Id.* at 710 (citing 29 C.F.R. § 1630.2(*l*)(3)(ii) and *DePaoli v. Abbott Laboratories*, 140 F.3d 668, 673 (7th Cir. 1998)). Hamilton fails to present any such evidence in his memorandum. His failure to fully discuss the substantial limitation issue could justify granting summary judgment on his disability claim.

Summary judgment, however, is not prudent. The Sixth Circuit has cautioned that a regarded-as disability claim is "rarely susceptible to resolution at the summary judgment stage" because it turns on an employer's motive or state of mind. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 451-52 (6th Cir. 2007). *See also Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001). At trial, the jury will already have to evaluate G.E.'s motive and state of mind when it hears Hamilton's race discrimination claim. The jury can determine whether the evidence

provides any support for Hamilton's disability claim as well. The jury will be in a better position than the court to determine whether Hamilton's disability claim has merit. *See Ross*, 237 F.3d at 709.

    C. FMLA claim

The jury also will be in a better position than the court to determine whether Hamilton's FMLA claim has merit. Like a disability discrimination claim, a claim for FMLA retaliation turns on an employer's motive for discharging a plaintiff. *Bryson v. Regis Corp.*, 498 F.3d 561, 572 (6th Cir. 2007). G.E.'s motive presents a genuine issue of material fact, which is better resolved by a jury.

## III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that GE's motion for summary judgment (R. 64) is **DENIED**.

Signed on April 14, 2011

*Jennifer B. Coffman*

**Jennifer B. Coffman, Judge**
**United States District Court**